TEXAS COMMERCE BANK NATIONAL ASSOCIATION

v.

Ludovic SUAREZ.

Civ. A. No. 92–793.

United States District Court,
E.D. Louisiana.

Jan. 31, 1994.

---

Peter Stephen Title, J. David Forsyth, Sessions & Fishman, New Orleans, LA, for First City, Texas–Houston, N.A. and Texas Commerce Bank Nat. Ass'n.

Harry McGoodwin Zimmerman, Jr., Barkley & Thompson, New Orleans, LA, for Ludovic Suarez and Barkley & Thompson.

### ORDER AND REASONS

CLEMENT, District Judge.

Plaintiff's motion for summary judgment was decided this date on memoranda. For the reasons set forth below, plaintiff's motion is GRANTED.

### I. BACKGROUND

This is a suit on a guaranty executed by defendant, Ludovic Suarez. While the guaranty was the result of a complicated financial transaction, the relevant facts may be summarized as follows. Crescent City Communications Company, Inc. ("Crescent") filed a petition for bankruptcy on December 14, 1989. On October 4, 1991, Crescent executed a promissory note payable to First City, Texas–Houston, N.A. ("First City"), which represented an indebtedness of $350,000.00 and bore interest at the rate of 10.5% per annum. On October 7, 1991, defendant executed a guaranty agreement ("guaranty"), in which he unconditionally guaranteed Crescent's debt up to $300,000.00. The note and the guaranty are in default for nonpayment.[1]

This action was initially filed by First City, on March 4, 1992. First City was proceeding on the guaranty, executed by defendant, and sought the $300,000.00 in principal plus interest and attorney's fees. On October 30, 1992, the Comptroller of the Currency placed First City in receivership and appointed the Federal Deposit Insurance Corporation ("FDIC") as receiver. On that same date, the FDIC assigned its right, title, and interest in the guaranty to New First City, Texas, Houston N.A. ("New First City"), a bridge bank organized by the FDIC to operate the failed institution, pursuant to 12 U.S.C. § 1821(n).

On February 13, 1993, New First City was closed by the FDIC and placed in receivership. Subsequently, the assets and claims asserted in this litigation were assigned to plaintiff, Texas Commerce Bank National Association ("TCB"), by the FDIC as receiver of New First City. TCB intervened in these proceedings and filed an amended complaint, substituting itself as plaintiff in First City's stead. TCB is the holder of both the promissory note and the guaranty.

### II. ANALYSIS

Defendant has raised numerous defenses to plaintiff's claim. This Court need not, and cannot, address the merits of the bulk of those arguments because of the *D'Oench, Duhme* doctrine. This doctrine protects the FDIC "from unwritten side agreements that tend to diminish the value of a facially valid instrument." The United States Supreme Court held, in *D'Oench Duhme & Co. v. Federal Deposit Ins. Corp.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), that "the statute creating the FDIC reveal[ed] a federal policy to protect [the FDIC] and the public funds which it administers against misrepresentations as to the ... assets in the portfolios which [the FDIC] insures or to which it makes loans." *Porras v. Petroplex Savings Ass'n*, 903 F.2d 379, 380 (alterations in original) (quoting *D'Oench*, 315 U.S. at 457, 62 S.Ct. at 679).

To further this policy, "the Court held that secret agreements that tend to deceive creditors or the public authority [can] not be raised as a defense against the FDIC in its corporate capacity when it seeks to enforce a note." *Id.* Congress has codified the

---

**1.** Following nonpayment, First City exercised its contractual right to accelerate.

Court's holding in *D'Oench.* 12 U.S.C. § 1823(e). The Fifth Circuit has held that this doctrine not only applies to the FDIC but also to those private parties that purchase the assets of failed institutions from the FDIC. *Porras,* 903 F.2d at 381.

■■■ Several of the defenses asserted by Suarez ask this Court to look beyond written documents to oral statements and affidavits. That kind of evidence is barred by *D'Oench* and this Court may not consider it. Suarez asserts, however, that the Court may look to Crescent's Third Amended Plan of Reorganization ("the plan"), which he contends made his guaranty conditional on the acquisition of Crescent's stock. Suarez contends that because such an equity interest was never acquired his obligations under the guaranty are void. The Court finds this argument to lack merit. The plan was clearly conditioned on Suarez's guaranty. The guaranty was not, however, conditioned upon the plan. The plain terms of the guaranty agreement state that Suarez "unconditionally guarantees" Crescent's indebtedness. The Court finds that nothing in the plan or the Bankruptcy Court's confirmation order indicates that the guaranty executed by Suarez would be nullified by the plan's failure.[2] Accordingly,

IT IS ORDERED that plaintiff's motion for summary judgment is GRANTED.

IT IS FURTHER ORDERED that plaintiff submit a judgment, approved as to form by defendant, within fifteen days of the entry of this order.

---

**2.** Because they do not serve to nullify the guaranty, the Court need not decide whether *D'Oench* or the parole evidence rule bars consideration of the plan or the confirmation order.